## DEWEY v. WILLIAMS.

In case, if the declaration alleges that the defendant took and drew from the dam and flume so much water as to stop the plaintiff's mill, the latter can not recover, merely because he drew the water from a wrong place.

A witness' testimony on cross-examination, that he did not make a certain statement as to a matter not material to the issue, can not be contradicted, unless it has a bearing upon his feelings toward one of the parties.

Where the jury had a view of a stream and mills, though the state of the water was different from what it was at the time of the grievance complained of, the verdict will not be set aside, because measurements of the water at the time of the view are put in evidence.

· In case, the writ alleges that since the 16th of August, 1830, the plaintiff has been seized and possessed of an ancient grist-mill, situate upon the Israel's river, in Lancaster, and in common with other mill-owners, of a dam, &c., to drive their mills and said grist-mill, and has possessed and used a flume to said grist-mill, and had the right to maintain, repair and use it, and the right to draw water from said dam through said flume, sufficient to carry two runs of stones in his grist-mill, prior to the right of any other person to use water from said pond; yet the defendant, from the 10th day of January, 1858, to the 20th of March, 1858, used and occupied a foundery and machine shop, erected over and across said flume, between the plaintiff's grist-mill and said dam, and to carry his wheel therein wrongfully drew and took so much of the water of said river from said dam and flume that he thereby deprived the plaintiff of water to carry his grist-mill, or any run of stones therein, stopping the water from coming to it, and obliging it to stand still from want of water, whereby the mill was rendered useless, and the plaintiff lost the profits of it, &c.

Under the general issue the plaintiff showed title to his grist-mill, under deeds since 1790, and possession by himself since 1830, and claimed the exclusive and prior right to the water to carry two runs of stones, and that the defendant has used the water in his foundery in such a manner as to injure him.

Both parties claimed under one McIntyre, whose deed to Hunt, under whom the defendant claims, contains an exception and condition as follows :

"And except the right of maintaining the necessary flume for said grist-mill, on the condition that said Hunt shall support one half of the dam that I now support, and be at half the expense of said grist-mill flume, as far down as he, Hunt, may draw water from it.

The defendant showed that under his deed of January 11, 1859, he took possession of his foundery, above the defendant's grist-mill, and below the dam, and had a prior right to the water before all others, except the grist-mill. He insisted that he used the water when it was wanted for the grist-mill, but by consent; but that the plaintiff, by unsuitable wheels, used more than he had right to use, and that there was a leakage, or waste of water, through the sides or bottom of his flume, or from the dam under or near it, or from bad gates, to his injury.

Chase, the plaintiff's miller, testified that the leakage from the plaintiff's flume would furnish water to run the foundery, and leave a surplus equal to one third the power for a run of stones in the grist-mill. He testified as to the relative value of different wheels, and that during most of the time complained of in the plaintiff's declaration, there was not sufficient water to carry two runs of stones in the grist-mill.

On cross-examination, he said he did not, during this time, nor had he ever, chained or bound his wheels, nor sluiced the water through his wheels, nor told any one he had done so.

The defendant called witnesses to testify that Chase had made such statements to them. To this evidence the plaintiff objected, but the court admitted it as tending to contradict Chase.

The jury, by assent of both parties, viewed both the mills. After the view, the defendant, who was a witness, submitted measurements of the waste water that escaped from his sluiceway at the time the jury were there. The plaintiff objected, but they were admitted, as showing no facts different from what the jury saw, and as explanatory of what their attention was called to.

The plaintiff testified, in answer to inquiries of his counsel, relative to his refusing to join in making repairs at a former period, and the reasons of it. The evidence was objected to, and rejected as foreign to the issue.

The plaintiff claimed that he was entitled to damages in consequence of the defendant tapping his flume, and drawing water from it by his penstock, but the court held it immaterial where the water was taken from, whether from the flume or the dam. The question was, whether the plaintiff was deprived by the defendant of water necessary to carry two runs of stones in his grist-mill, no

damages being claimed in the declaration on account of the use of the penstock; and the plaintiff excepted.

The court charged the jury that the plaintiff could not claim of the defendant damages caused by his own acts, &c., and the plaintiff excepted.

*Heywood, Benton & Ray,* for the plaintiff.

*Burns & Fletcher,* and *G. C. Williams,* for the defendant.

BELL, C. J. The first question raised by this case relates to the ruling as to the penstock. The plaintiff claims that the taking of the water from the plaintiff's flume was wrongful, and subjected the defendant to nominal damages as an infringement of the plaintiff's right.

If we assume that the case shows no right on the part of the defendant to draw water from the flume, and that the act of taking water from the flume was wrongful, and though accompanied by no claim of right, gave the plaintiff a right to recover nominal damages for the vindication of his right in an action for that purpose; the question here is, if the declaration sets forth any grievance of that kind, or claims damages on that account.

The gravamen alleged in the declaration is, that the defendant wrongfully drew and took so much of the water of said river from said dam and flume, that he thereby deprived the plaintiff of water to carry his grist-mill. Now it is evident that the complaint is not that the defendant drew water from the flume to his injury, but that he drew so much water as to prevent the use of his grist-mill. There is nothing in the declaration which suggests that the ground of complaint was, that the water was wrongfully drawn at a place where the defendant had no right to take it. If the declaration had been that the defendant wrongfully took large quantities of water from the flume, whereby the plaintiff was deprived of the water necessary to carry his mill, the plaintiff might recover for drawing the water where he had no right to draw it, from the flume. But as the declaration is drawn, we think the ruling of the court is correct.

The evidence tending to contradict Chase was inadmissible, upon the ground that the fact upon which he was contradicted was immaterial. The general rule on this subject is laid down in *Seavey* v. *Dearborn,* 19 N. H. 355; *Combs* v. *Winchester,* 39 N. H. 13. It is generally immaterial what a witness has said, unless it has a bearing upon his state of feeling toward one or both the parties, and if the witness is asked the question no evidence is admissible to contradict him. It is not suggested that the questions had any relation to the state of feeling of Chase toward the defendant, which might render them competent.

Beside, it is quite immaterial whether the witness had bound or chained his wheels, or sluiced the water. The evidence proved nothing either way, as to the questions in controversy in the case.

It is suggested that the evidence as to Chase's statements did not

show them to relate to the time embraced in this action, and that the question was submitted to the jury whether they had such relation, but this seems entirely immaterial.

The jury were allowed to view the mills by consent of the parties. It may be generally regarded as of doubtful utility to allow a view when the condition of things has been changed, or is materially different from what it was at the time of the grievance complained of; it may be allowed in the discretion of the court, to give to the jury a degree of familiarity with the locality which would render the evidence more intelligible, but a caution would be needed to prevent the jury from being misled.

It would be competent for the parties to show measurements of the water and the like, so long as the condition of the mills and the river remained substantially unchanged. If there was a change, but not of a very material character, they could hardly be excluded, since change is the daily incident of every thing of that kind. From the nature of the case, it must be, to some extent, a matter of discretion for the court to determine what evidence shall be admitted in such cases. If the change was slight, it would be clearly competent. The evidence of price is never confined to the day of sale, if none can be reached applying to that day, but evidence may be introduced applying to times more or less remote, or to places more or less distant, according to circumstances. And it does not occur to us that there is any thing in the character of these measurements, which should require them to be confined to the time alleged in the writ, or to the exact condition of things then existing; but they might, under proper circumstances, be admitted, as tending to show what must probably have been the condition of things at the time in question. There is nothing stated in the case which shows that the discretion of the court was not properly exercised in the admission of this evidence.

The suggestion in the case that it was merely explanatory of what the jury had seen, and that it was not likely on that account to mislead them, but rather to aid them in comparing the facts then, with their condition as they were shown to be by other evidence in the case, seems to us to have a reasonable foundation.

Some exception seems to be taken to the instructions given to the jury, not because they contained any unsound legal opinion, but because they are supposed to cast some censure on the plaintiff, but there does not seem to us any foundation for the objection. It is not remarkable that counsel are apt to think some expression of the court may have had more weight with the jury than our experience leads us to believe should be attributed to them.

On these views there must be

*Judgment on the verdict.*