Merrimack,
Oct. 6, 1925.

## STATE *v.* GEORGE L. HAUSE.

On a trial for the murder of a storekeeper in his store on a Saturday night, evidence that he ordinarily took in a considerable amount of money on Saturday and carried it home with him at night is relevant as explanatory of the reason for the perpetration of the crime.

A witness may be asked what his knowledge of a custom is, without preliminary examination as to the extent and regularity of the course of conduct, or his personal means of information. The extent of such preliminary examination, if any, is within the discretion of the trial court.

Enlarged photographs showing the injuries to the deceased are relevant for their bearing on the nature and degree of the crime, on the defendant's purpose and mental state, and to aid in making clear the oral testimony about the injuries.

Objection that such photographs are distorted raises only a question for the discretion of the trial court.

The opinion of a non-expert witness based upon observation of the defendant

while undergoing a mental examination, that the defendent was feigning insanity, is competent.

A question asked of a witness by the court with reference to a fact to which the witness has already testified is not objectionable as an assertion by the court of the fact in question. It is merely an assumption of the fact for the purpose of further inquiry.

Objection to the charge to the jury cannot be considered by this court when no exception was taken and the question was not transferred by the trial court.

INDICTMENT, for first-degree murder. A jury found the defendant guilty, with capital punishment.

Transferred by *Branch,* C. J., on exceptions taken during the trial.

*Jeremy R. Waldron,* attorney-general, and *Herbert W. Rainie,* solicitor (*Mr. Rainie* orally), for the state.

*David F. Dudley, N. J. Costakis* and *John E. Tobin* (*Messrs. Dudley* and *Tobin* orally), for the defendant.

ALLEN, J. Exception was taken to testimony of the murdered man's widow that he usually did about three hundred dollars of business Saturdays at his store and took the money home with him on closing at night. The murder was committed on a Saturday night and, according to the state's theory, in the course of robbery. This made the evidence relevant as explanatory of the reason the crime was perpetrated.

The defendant concedes the competency of evidence of habit or custom to show conduct on a particular occasion, and such competency is now well established. *Daley* v. *Company,* 81 N. H. 502, and cases cited. The claims are now made that if evidence of custom was here admissible, the evidence received showed no established or regular custom and was hearsay in character.

At the trial these claims were not brought to the court's attention, and the only ground then stated in objection to the testimony was that it was of custom. In this situation the only ruling to which exception was taken was that evidence of custom was admissible. *St. Laurent* v. *Railway,* 77 N. H. 460, 463. This ruling being correctly made, the exception is to be overruled.

It may, however, be said that the grounds on which the exception is now sought to be supported appear to be without merit. The testimony of the witness justified a finding of a custom from her personal knowledge about it. The extent and regularity of repetition

necessary to give an act the character of a custom is a matter of fact. The witness testified to a "usual" course of her husband's business. She did not testify definitely how she knew about it or to the extent and regularity of the practice.

The law is not so strict or finical as to require that a witness should first testify to the details either of extent and regularity of the course of conduct, to show whether it could be found to be customary or habitual, or of personal knowledge about it. There is no rule of evidence that a witness shall testify to the basic items from which his general knowledge of a matter is derived before testifying to the matter itself. A witness may be asked what his knowledge of a custom is, without preliminary tests either of his knowledge or of the custom. It is largely within the trier's discretion to have the witness's source and extent of knowledge inquired into before permitting testimony of what the witness asserts he knows. Cross-examination is available to undertake to weaken or destroy the force of the testimony, and a motion to strike out testimony later shown to be incompetent is always in order. Here there was no cross-examination of the witness and no such motion. The objections now made, if not an afterthought, were then regarded as too trivial to warrant them. Whatever the fact, the record shows no evidence to which the objections relate to have been erroneously received.

The defendant also excepted to the admission of photographs of the head of the murdered man taken after he was killed. At the trial the only ground of objection stated was that they were distorted. The claim that the exception saved all grounds of objection is not supported by the record. While the objection with the statement of its ground, the court's ruling, and the exception took place at intervals, they were all correlated so as to be connected and dependent. The objection now for the first time made that they were not relevant to any issue in dispute is a shift from the one made at the trial and is therefore not covered by the exception, similarly as in the case of the previous exception. The result follows that the exception does not apply to the present ground of irrelevancy.

Respecting the relevancy of the photographs, it may be said that they would seem relevant for their bearing on the nature and degree of the crime and on the defendant's purpose and mental state, as well as to aid in making clear the oral testimony about the injuries. The manner in which the murdered man was killed was explained with considerable detail by one of the witnesses. No objection was made to this oral testimony, and it is a curious argument that the

real evidence of the photographs showing the injuries could not be received, when no suggestion was made that the oral description of the injuries was irrelevant.

The photographs were enlargements. This did not make them distortions, and the original ground of objection in that specific regard is based on the unsupported assertion of counsel and requires no attention.

If the stated ground of distortion implied a general ground of prejudice, whether they were unduly prejudicial or not was a question of fact to be determined in the court's discretion. *Pope* v. *Railroad*, 79 N. H. 52; *Rogers* v. *Rogers*, 80 N. H. 96; *State* v. *Braley*, 81 N. H. 323. If it can be said that discretion might have reached a different result, it cannot be held that it necessarily ought to have. It is not to be assumed that the photographs were red flags necessarily arousing the jury's passions and a will to avenge. Since they were relevant, their probable importance was to be compared with their probable prejudicial effect on the inquiry whether they would do more good than harm, and the finding that they would is a reasonable one.

A witness testifying to certain conduct of the defendant which he had observed was permitted to state what he thought it meant. The exception to the testimony of such inference fails to recognize the present state of the law regarding opinion evidence. The dissenting opinion relative thereto in *State* v. *Pike*, 49 N. H. 399, now prevails as authority. If a witness has such knowledge about a matter as to make his opinion about it helpful to the trier in his duty to find the facts, his opinion is to be received. *State* v. *Killeen*, 79 N. H. 201; *Kelsea* v. *Stratford*, 80 N. H. 148. Whether it is thus helpful is an inquiry of fact, and the only question of law presented is whether there is any evidence to support the finding.

The defendant underwent an examination of his mental condition by medical experts. During the examination he looked up from a test and winked at the witness, the officer who had him in custody. The incidental issue was whether his inability or difficulty to meet the test was pretended or real. That an observer might form an opinion of special value by reason of being on the watch, must be a possible finding. The question whether the defendant was feigning or not related to a state of mind, and was to be determined by what he said and did and the way he acted. The manner of his conduct may well have registered in the mind of the observer some indication of the significance of the conduct which would not be imparted to

others by a mere statement of the conduct stripped of its apparent. cause and purpose, and the jury may well have gained more useful information on the issue from the witness's observations and accompanying conclusion than from a statement only of a physical occurrence isolated from its motivating spirit. The court's finding that the opinion would help the jury is therefore a reasonable one, and the exception fails.

In connection with this opinion evidence, the court of its own accord asked the witness if it was the wink that led to his conclusion that the defendant was feigning, to which he replied that it was. After the answer was given, the defendant excepted.

In *Tuttle* v. *Dodge,* 80 N. H. 304, it was held that an exception cannot be taken to an argument to the jury, but that objection should be made to the court's ruling to which exception may be taken. The reasoning on this point would seem applicable to exceptions to the court's questions to a witness. The court's right to interrogate witnesses in the administration of justice is conceded, and in asking a question, there is no statutory "ruling, direction or judgment," unless there is an implied ruling that the question is proper and an implied direction to the witness to answer it. It would seem desirable as a matter of practice that objection to the interrogation should first be made, to be given consideration, and with the right of exception if the objection is overruled. *Dunn* v. *People,* 172 Ill. 582. Inasmuch as the state has here in effect waived this question of the standing of the exception, it is treated as well taken.

It is contended that the question asserted an unproved fact and called for a "prejudicial repetition" of testimony of the witness already given, in stressing evidence for the state to the detriment of conflicting evidence for the defendant.

The first point of the contention fails to consider the previous testimony of the witness that the defendant had winked at him. When a witness testifies to some fact, further questions about it are asked on the assumption, and not as an assertion, of its truth.

That the witness had already been asked and answered the question would not in and of itself be of legal prejudice. Though they are subject to exclusion because they are repetitions, that the same questions are asked twice of the same witness does not thereby make them prejudicial. At most they emphasize or accumulate the effect of the testimony. Questions asked in direct examination are frequently repeated in cross-examination in the same or modified form.

But questions by the court are generally understood by jurors to

have particular pertinence, and if they indicate the court's views or opinions respecting the merits of the case or any of its issues, or the evidence bearing thereon, they are objectionable. The court's duty, however, to aid the jury in a clear understanding of the testimony and in eliciting the truth, goes without saying. Moreover, the court must understand the testimony himself, to be able properly to pass on motions and requests for rulings. Motions for nonsuits, for directed verdicts, for rejection of testimony, for taking away issues, for setting aside verdicts and for requests for instructions all involve the requirement of the court's understanding of the evidence aside and apart from the jury's consideration of it. The practice of the trial court to ask questions both for the jury's and his own benefit in their respective functions is long and well established, and authority for it is abundant. See 1 Wig. Ev., s. 784; 38 Cyc. 1316; 57 L. R. A. 875, note; L. R. A. 1916A, 1191, note.

No claim is here made that the court purposely "took sides" in the trial, or even had any bias against the defendant. Certainly the question excepted to does not indicate it. Objection had been made to the witness's giving his opinion, and the court's effort to be assured that the opinion might help the jury by a question definitely in search of the reasons for it did not signify that he considered the opinion as valuable evidence to which the jury should attach particular weight. The charge was explicit on the subject of the jury's function and duty to weigh the evidence, and was altogether impartial.

There is no legal presumption, and it does not appear as a fact, that the defendant was prejudiced in his rights by the question. The exception is overruled.

The other exceptions are waived.

The defendant has asked this court to set aside the verdict on the ground of alleged errors in the charge. Consideration of the subject matter of the request is denied. No exceptions were taken to the charge, and the superior court has transferred no question relating to it. By Laws 1901, c. 78, s. 5, questions are transferred to this court from the superior court only on exceptions or on cases reserved by the trial justice. Counsel may not transfer questions here, and if undertaken to be thus brought, they are not received.

The claim that there is authority for the procedure under *Buzzell* v. *State*, 59 N. H. 61, and *Palmer* v. *State*, 65 N. H. 221, both capital cases, is wholly without merit. In the former case a petition for a new trial was considered by the court on a reserved

case. The departure from ordinary practice was in the court's consideration of questions of fact. This was in 1879, and under the separation of the courts in 1901 the case would not now be followed. *Nawn* v. *Railroad*, 77 N. H. 299, 303. In the *Palmer* case a rule of evidence based upon public policy was waived in a petition, similarly reserved, on the evident ground that the policy of the rule did not apply in a capital case. In neither case was there any problem of jurisdiction.

Aside from the jurisdictional bar, first principles conclude the defendant's rights to have questions brought here in such manner. The allowance of such procedure would do away with the necessity of taking exceptions during a trial. Moreover, failure to except made the charge fair and necessarily waived all claim of error in it. The nature of the case creates no special exigency for departure from the fairness of trial. Fairness of trial means fairness to both parties, and its importance is not modified by the importance of the case. Each party has rights which may not be destroyed by privileges given the other. The state is entitled to have its rights respected and maintained as much as the defendant his. Favor to the defendant because his life is at stake is not to be granted. He has been deprived of none of his rights and there is no miscarriage of justice. It is not a case of closing the door to the righting of wrong. It is a matter of upholding the law.

*Exceptions overruled.*

All concurred.