Rockingham, }
March 6, 1934. }

STATE *v.* SYDNEY THORP.

502

*Francis W. Johnston,* attorney-general and *George R. Scammon,* solicitor (*Mr. Johnston* orally), for the state.

*Stewart E. Rowe* (by brief and orally), for the defendant.

MARBLE, J. "All murder committed ... in perpetrating or attempting to perpetrate ... robbery or burglary, is murder of the first degree." P. L., c. 392, s. 1. "The punishment of murder in the first degree shall be death or imprisonment for life, as the jury may determine. ... If the jury shall find the respondent guilty of murder in the first degree, the punishment shall be life imprisonment unless the jury shall add to their verdict the words, with capital punishment." P. L., c. 392, s. 4. Robbery is the felonious taking of prop-

erty from the person of another by force.    *State* v. *Iacavone*, 85 N. H. 207, 208; *State* v. *Gorham*, 55 N. H. 152, 166.

The court did not err in refusing to instruct the jury that they might find the defendant guilty of a lower grade of homicide than that of first-degree murder (even assuming the request to so charge had been seasonably made), since there was no evidence from which second-degree murder or manslaughter could reasonably be  inferred. *McCutcheon* v. *State*,  199 Ind. 247, 257;  *People* v. *Utter*, 217 Mich. 74, 88; *State* v. *Messino*, 325 Mo. 743, 769; *Wever* v. *State*, 121 Neb. 816, 820; *State* v. *Giampietro*, 107 N. J. Law, 120, 122; *People* v. *Chapman*, 224 N. Y. 463, 479; *Commonwealth* v. *Hadok*, 313 Pa. St. 110, 115; *State* v. *Whitfield*, 129 Wash. 134, 141.

The defendant denied killing Trudeau or being present at Hersey's bakery at all.   The state's evidence was all to the effect that he entered the bakery for the purpose of robbing Trudeau and that he killed him while accomplishing that purpose.   "Intent not being an element of the crime of murder in the first degree, when committed under such circumstances, there was no room for the exercise of a power to find the defendant guilty of a lesser degree of felonious homicide depending upon the existence or non-existence of deliberation and premeditation."   *People* v. *Schleiman*, 197 N. Y. 383, 390.

In *People* v. *Moran*, 246 N. Y. 100, 102, 103, *Cardozo*, C. J., says: "The felony that eliminates the quality of the intent must be one that is independent of the homicide and of the assault merged therein, as, *e.g.*, robbery or larceny or burglary or rape.   Cases are found at times where the inculpatory facts are susceptible of one interpretation only: either the one accused was engaged in an independent felony at the time of the killing, or he did not kill at all.   In such conditions the law does not say that other forms or grades of homicide shall be submitted to the jury."

"The evidence shows, without contradiction, that the murder was committed in the perpetration of a robbery . . . .   The only defense was that the defendant was not present and was not participating in the crime.   If [defendant] . . . was present, participating in the crime . . . he was guilty of murder in the first degree, and if not present . . . he should have been acquitted."   *Lutes* v. *State*, 37 Oh. App. 353, 364, 365.   Cases on the subject are collected in 30 C. J. 403.

The contention that in murder cases the jury should be permitted to exercise leniency without restriction is untenable.   "The proposition that a judge administering justice in criminal cases commits an error . . . by failing to tell a jury that they may . . . find a verdict

unwarranted by the evidence . . . would lead to a perversion of justice." *State* v. *Young*, 67 N. J. Law, 223, 234. Furthermore, since the jury in the present case declined to exercise such leniency as the statute allowed, it is difficult to understand how the defendant could possibly have been harmed by the refusal to grant his request, even if legally entitled to the instruction asked for.

While preparing the case for trial, defendant's counsel filed a written motion asking leave to employ an expert at the expense of the state to examine the clothing on which the state claimed there were blood stains. This motion was granted on condition that the examination be made in New Hampshire. Conceding the court's power to grant the motion, certainly the requirement that important exhibits be kept within the jurisdiction did not constitute an abuse of discretion. Moreover, if analysis outside the state was essential to the preparation of the defence, that fact, so far as the record discloses, was not brought to the attention of the court until the day of the trial when exception to the court's order was first taken. Ordinarily an exception is held to be waived unless taken at the earliest opportunity. *Foss* v. *Strafford*, 25 N. H. 78; *State* v. *Raymond*, 27 N. H. 388, 403; *Peebles* v. *Rand*, 43 N. H. 337, 342.

Since the defendant did not avail himself of the privilege granted, it is unnecessary to consider his objection to the introduction of the clothing as an exhibit at the trial on the alleged ground that the chemist who analyzed the blood for the state had not left an adequate amount of material for another expert to examine.

"Every person indicted for an offense the punishment of which may be death shall be entitled to . . . a list of the witnesses to be used . . . with the place of abode of each, to be delivered to him twenty-four hours before the trial." P. L., c. 368, s. 1.

The street address of a witness said to live in Boston did not appear on the state's list. The object of the list was "to inform the respondent, with reasonable certainty," what persons were "to be called to testify against him." *State* v. *Burke*, 54 N. H. 92, 94. In the case of *Lord* v. *State*, 18 N. H. 173, cited by the respondent, it was held that the words "Dover, N. H." sufficiently stated "the place of abode of the witness." Obviously this case does not support the respondent's contention. It is enough to say, however, that no prejudice could have resulted, since the witness in question did not testify.

Extra-judicial statements of the defendant from which an inference of guilt might be drawn were admissible. *State* v. *Wright*, 68 N. H. 351. Assuming that it was essential for the state to show the volun-

tary character of the admissions made by the defendant after his arrest, the evidence justified the preliminary finding that the defendant was properly cautioned.

The presiding justice did not err in overruling the defendant's objections to certain alleged leading questions. Hening's Digest, *pp.* 670, 671.

Some days before the commission of the crime Trudeau and the defendant were eating at the same lunch counter. When Trudeau had finished his lunch he took out his pocketbook and asked the waitress to change a ten dollar bill. After he had left the restaurant the defendant inquired who he was and commented on the fact that he had "quite a number of" bills. The contention that it was just a surmise as to whether or not the defendant heard the conversation concerning the ten dollar bill does not merit serious discussion.

This is equally true of the exception to the admission and exclusion of certain opinion evidence.

A witness who worked for the Kittery Tire company in Kittery, Maine, less than a mile from Portsmouth, stated that the defendant stood around his shop on the afternoon of February 5 "bumming" cigarettes with the excuse that he had no money; that he left for Portsmouth about five o'clock and "said he was going to meet a fellow there to get some money." The witness testified: "I asked him if somebody owed him money in Portsmouth or if he had ever worked there. He said no, sir, he never had worked in Portsmouth. I says, 'How do you expect to get money in Portsmouth if you haven't got it owed to you?' He says, 'I have got it before and I can get it again.' I quizzed a little bit there because it sounded kind of funny . . . I asked how he could get money without it being owed to him. He says, 'I have got it before; I can get it again.' I asked again, 'How?' He snapped his fingers this way . . . He was going to Boston if he got more than twenty dollars; if he didn't get more than twenty dollars he was coming back to see me that night."

This evidence, as well as evidence that sometime in January the defendant inquired where Hersey's bakery was situated, was admissible on the issue of intent. *State* v. *Lapage*, 57 N. H. 245, 305; *State* v. *Davis*, 69 N. H. 350, 352. The weight and interpretation to be given the evidence were of course for the jury.

The morning after his arrival in Lynn the defendant told his landlady that he was employed in a bakery and had worked fifteen hours the night before. Defendant's counsel excepted to the admission of this evidence on the ground that there was "no particular point to

it." The point is entirely obvious. A falsehood uttered to avoid suspicion is relevant to show consciousness of guilt. 16 C. J. 550, s. 1059.

Trudeau had work to do at the bakery on the night of his death. At half past six he left a Portsmouth restaurant, having first bought and lighted a cigar. A partly smoked cigar of the kind which he then purchased was found on the floor of the bakery when the body was discovered. As tending to show the time of his death, evidence as to the length of time required to smoke a cigar of that particular brand was introduced. There was also evidence of the time required to walk from the restaurant to the bakery and from the bakery to the office of the bus line. "If an experiment has any legitimate tendency to prove any matter in issue in the case on trial, it is relevant to that issue." *Healey* v. *Bartlett*, 73 N. H. 110, 112. "There is nothing stated in the case which shows that the discretion of the court was not properly exercised in the admission of this evidence." *Dewey* v. *Williams*, 43 N. H. 384, 387. See also *Saucier* v. *Spinning Mills*, 72 N. H. 292, 294, and cases cited.

Photographs of the footprints on the linoleum were taken by a criminologist. The witness described the photographs as follows: "Those were made with a light which produces . . . ultra-violet rays and increases the contrast in the blood and in the print itself, and then a special plate used to bring out all the detail; some of it not visible to the naked eye only with that light." The defendant excepted to the introduction of the photographs on the ground that the linoleum itself, which was an exhibit in the case, was the "best evidence." The process employed by the photographer furnished "abnormal aid to the senses." The court impliedly found the process to be a trustworthy one, and the photographs thus taken were therefore admissible. 2 Wig., Ev. (2d *ed.*), s. 795. See also *State* v. *Hause*, 82 N. H. 133, 136. The testimony of the criminologist to which exceptions were taken was admissible under the general rule applicable to opinion evidence. *State* v. *Mannion*, 82 N. H. 518, 523.

The court correctly ruled that the defendant could not prove his good character by evidence of specific acts. *State* v. *Lapage*, 57 N. H. 245, 290; *State* v. *Currier*, 79 N. H. 171, 172. The particular evidence offered was that of the defendant's employment by one Robinson two weeks before the commission of the crime. Defendant's counsel now states that he was "intending to lead up" to the fact that the defendant injured his wrist on a nail in Robinson's cellar and got blood on his clothing at that time. This intention was not made known to

the court. Counsel said: "I think it [the evidence] may be [material] ... as to his dependability and as to his honesty. We are offering it for that." The presiding justice inquired if he meant by this that the testimony was in the nature of character evidence, and counsel answered, "I am willing to let it stand that way, yes."

"The objection now for the first time made ... is a shift from the one made at the trial and is therefore not covered by the exception." *State* v. *Hause*, 82 N. H. 133, 135.

The court did not err in restricting the evidence relating to the sale of shoes to those shoes capable of making an imprint like that on the linoleum. Evidence which had no logical tendency to prove the respondent's contention that some one else might have made the tracks there was of course inadmissible. *Theobald* v. *Shepard*, 75 N. H. 52, 56.

A witness was asked if he knew "whether or not Mr. Trudeau was to work for Antonio Ouilette," who had testified for the state. The question appeared to be immaterial and to call for hearsay. Nor was the evidence admissible, as the respondent now claims, to contradict Ouilette's testimony. *State* v. *Hersom*, 84 N. H. 433.

Respondent's counsel asked a physician a hypothetical question based on facts "said to be" true. No error is apparent in the exclusion of this question. It was not in proper form. "Generally speaking, a hypothetical question should state all the facts relevant to the formation of an opinion, and then, assuming the facts stated to be true, ask the witness whether he is able to form an opinion therefrom, and, if so, to state such opinion." 3 Jones, Evidence (2d *ed.*), s. 1338.

A witness who was driving from Maine to Massachusetts on the day of the murder gave the defendant a ride from Wells Corner, Maine, to Kittery. The right of the state to inquire what reason the defendant gave for stopping at Portsmouth cannot be seriously questioned. 2 Wharton, Crim. Ev. (10th *ed.*), s. 906.

Certain extra-judicial assertions in his own favor made by the defendant after his arrest were properly excluded. *Caplan* v. *Caplan*, 83 N. H. 318, 327; *Hansen* v. *Railway*, 78 N. H. 518, 522.

The defendant testified that the black jack found in his room was made for the use of a truck driver whom he knew. It was proper for the state to cross-examine him as to why the truck driver wanted such an implement. The fact that the inquiry called for the conversation between the defendant and the truck driver is immaterial. The purpose of the examination was to test the truth of the defendant's claim. See *Masterson* v. *Railway*, 83 N. H. 190, 195.

Cross-examination of the defendant as to discrepancies between his testimony at the trial and a stenographic report of statements made by him after his arrest was not objectionable on the ground that the report had not been regularly introduced in evidence. *State* v. *Mannion*, 82 N. H. 518, 522, 523.

Eleven exceptions were taken to the attorney-general's argument to the jury. The suggestion that defendant's counsel meant to convey the impression that Antonio Ouilette might have committed the crime was justified by the conduct of the defence. Ouilette worked with Trudeau at Hersey's bakery. According to the evidence, he waited near the bakery for more than an hour Sunday evening for Trudeau to arrive. He had on a zipper jacket like that worn by the defendant, and he was required by defendant's counsel to bring into court this jacket together with the shoes which he wore that night.

The attorney-general stated that the defendant was only a block away from Hersey's bakery at twenty minutes of seven. Defendant's counsel objected to the use of the word "block," whereupon the court instructed the jury, who had taken a view of the locality, to rely upon their own recollection. One of the definitions of "block" given by Webster is, "A square, or portion of a city inclosed by streets." As thus defined, the word correctly described the distance in question.

A witness whose name appeared on the state's list did not testify for the state but was called to the stand by the defendant. The attorney-general might legitimately refer to him as a witness for the defence.

In "reconstructing" the crime the attorney-general stated that the murder was committed "at seventeen, eighteen minutes of seven or a quarter of seven"; that the gag found in Trudeau's mouth was probably torn from one of the flour bags, and that certain of the bags on which blood had been found had evidently been used by the defendant to wipe the blood from his hands. All these inferences could properly be drawn from the evidence.

The defendant did not definitely deny making the statements attributed to him in the tire shop at Kittery but said he had no memory of the matter. The attorney-general might fairly argue that the testimony as to what the defendant said on that occasion was uncontradicted.

The defendant described the black jack as "made of friction tape, adhesive tape, a leather jacket and rubber piece, solid rubber and BB shot." Pellets of the shot were found on the floor of his room. He

testified that he made the black jack the day before his arrest at the request of a truck driver with whom he had worked. The truck driver did not testify. The state argued that the defendant broke the black jack in his struggle with Trudeau and repaired it after he got to his room in Lynn; that the original covering "may have been removed or may have been washed when the blood was still there, so bloodstains, if there were any, would be removed." The defendant stated on cross-examination that the leather covering was still on the black jack but "underneath the tape." It was entirely permissible for the attorney-general to make his argument more graphic and more suggestive by saying: "Just what he did do to it and what he left inside I don't know. It would be rather interesting to open it up and see."

The defendant excepted to the statement that the only reason why others whom the police had investigated "are not in court and this man is is because this man is guilty of this dastardly crime." This assertion followed an enumeration of five or more significant facts which tended to cast suspicion on the defendant. The attorney-general did not (as claimed by defendant's counsel) assume the role of witness or contend that the action taken by the police was evidence of the respondent's guilt. He merely asked the jury to find, in view of the circumstances he had previously enumerated, that the defendant was in court instead of somebody else because he was guilty. *Kambour* v. *Railroad*, 77 N. H. 33, 52; *State* v. *Hale*, 85 N. H. 403, 412.

Since the jury had a "duty to perform in the assessment of the penalty" (*State* v. *Tetrault*, 78 N. H. 14, 16), it was perfectly proper for the attorney-general to read to them the statute prescribing that penalty.

The claim that the presiding justice in his charge unduly stressed the state's evidence is without merit. The jury were reminded that the state had produced no eye witness to the commission of the crime and that no confession had been shown. They were informed that the state relied chiefly on circumstantial evidence and were warned that in drawing inferences from such evidence they might be "led to make hasty or false deductions." Their attention was then called to specific testimony which, "if believed," formed "a chain of circumstantial evidence." This evidence they were requested to consider "carefully and deliberately." They were further instructed that they stood "between the respondent and the State" and that each was "deeply interested in a proper decision"—the respondent, that he should "not be unjustly condemned"; the state, that there should be "no failure in the administration of justice."

The defendant's rights were adequately safeguarded by these instructions.

Although many of the exceptions have been treated collectively, all have received careful consideration, and nothing has been discovered in the entire record which would justify the conclusion that the trial was not fair.

*Exceptions overruled.*

All concurred.

ON MOTIONS. After the foregoing opinion was filed the defendant moved in the superior court for permission to photograph certain exhibits at the trial remaining in the state's possession. Also, an administrator of the defendant's estate appointed under P. L., c. 369, s. 8, moved that certain exhibits introduced at the trial and now in the custody of the court be ordered delivered to him as belonging to him in such capacity. Both motions were denied by *James*, J., subject to exception.

*Stewart E. Rowe* (by brief and orally), for the defendant and *pro se.*

*Francis W. Johnston*, attorney-general, opposed.

*Per Curiam.* Upon the first exception, there being no proceeding pending to which the motion could relate, there was no jurisdiction to act upon it. Moreover, if it be assumed that the court might consider the merits of the motion, no abuse of discretion in its denial appears.

The other motion was prematurely filed. Until the conviction becomes final so that it may not be set aside under any proceedings which might be hereafter brought, justice may require that all exhibits be held in custody.

*Exceptions overruled.*