**STATE of Maine**

v.

**Raymond V. THIBODEAU.**

Supreme Judicial Court of Maine.

March 22, 1974.

Thomas E. Delahanty, II, County Atty., Auburn, for plaintiff.

Gaston Dumais, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

On October 3, 1972 Raymond V. Thibodeau, the defendant, was convicted in a jury-waived trial of knowingly receiving stolen property in violation of 17 M.R.S.A. § 3551.[1] Sentenced to the Men's Correctional Center, the defendant appealed from the judgment, alleging five areas of error which he contends the Court below committed in connection with his trial. We disagree and deny the appeal.

The record reveals the following scenario:

On the morning of August 15, 1972 one Victor Kral, the manager of the Knox Mining Corporation, discovered a break at the company's offices in Rockland, Maine. Observing that the place was in disarray with papers strewn around and drawers

---

1. 17 M.R.S.A. § 3551. Buying, receiving or concealing; restoration of property; subsequent conviction

"Whoever buys, receives or aids in concealing stolen property, knowing it to be stolen, shall be punished:

1. Value does not exceed $100. If the value thereof does not exceed $100, by a fine of not more than $100 or by imprisonment for not more than 6 months;

2. Value exceeds $100. If the value thereof exceeds $100, by a fine of not more than $500 or by imprisonment for not more than 5 years.

. . . ."

open, he particularly noticed that several pieces of equipment were missing from the office vault and from the drawers of his own desk. He made an inventory of the missing equipment and alerted the police.

Later that same day one Edward Maynard, a salaried undercover agent attached to the Lewiston Police Department, on his return home, observed in his apartment at 77 Pierce Street in Lewiston a large quantity of equipment with which he was unfamiliar. The defendant, who for approximately three weeks had been residing in the apartment and sleeping in one of the bedrooms with Maynard's permission, was there with several other people.

Maynard testified that, although he permitted other individuals to sleep in the apartment from time to time, he alone paid the rent.

Suspecting that the property might have been stolen, Maynard sought to get information concerning the same. The defendant, in discussing the matter with the undercover agent, fetched from his bedroom a particular piece of equipment which he showed to Maynard. Both then went to the bedroom, where the defendant, after taking up another piece of equipment described as a radioactive tester, explained to Maynard several of the component parts of the article. When asked what he could do with all of this, Thibodeau answered, according to Maynard, that he wanted to "cannibalize" the parts in order to make other things.

Further noticing the other individuals present in the apartment taking turns at typing out payroll checks on blank forms bearing the name of a mining company, Maynard became increasingly suspicious respecting the possible theft of the goods displayed in the rent. He made overtures for the purchase of some of the equipment. The defendant, although present, was not shown to be an active participant in the negotiations that followed.

Leaving the apartment with the typewriter, an adding machine and a jigsaw, for the ostensible purpose of fencing the same, Maynard, instead, called the Lewiston police and conveyed to them his previous observations, supplying them with an inventory of the equipment he had seen and informing them where the various pieces were located in the apartment. Meeting with two Lewiston detectives by prearrangement, the undercover agent exchanged the typewriter and adding machine for $105 in bills of various denominations the serial numbers of which had been recorded.

Returning to the apartment with the money and the jigsaw, Maynard handed the money to one of the persons in the apartment. This individual, after counting it, turned the money over to one of the others. Maynard testified that he did not see any of the money being given to the defendant prior to his departure from the apartment some forty-five minutes following the concluded transaction.

In the meantime, the Lewiston Police Department, made aware of a break in the Rockland area, was furnished a list of the equipment taken in the break by the Rockland Police Department and the State Police, and this included an adding machine, a typewriter and a jigsaw which the undercover man had offered to the Lewiston officers at their predetermined rendez-vous.

Pursuant to a search warrant obtained on the same day, several members of the Lewiston Police Department set out that evening to execute the warrant at the apartment located at 77 Pierce Street, where they were met by two unidentified males and one female. Immediately prior thereto, however, Mr. Kral had identified the typewriter and adding machine, which the Lewiston officers had purchased from Mr. Maynard, as part of the loot stolen from his company. The defendant was not on the premises when the police arrived, but got there shortly thereafter. Upon arrival, he was arrested and searched. This

resulted in the recovery of $40 of the marked money from Thibodeau's pocket. Various pieces of equipment were then seized by the police and brought to the police station in Lewiston where Mr. Kral identified the same either as his own property or that of the mining company for which he worked.

## I. MOTION TO SUPPRESS

■ The defendant's first claim of error attacks the lower Court's denial of his pretrial motion to suppress the equipment seized by the police. Although the Justice below ruled that the search warrant was defective,[2] nevertheless, he denied the motion to suppress in light of his specific finding that

"they [the police] didn't need a search warrant because the man in the apartment [Maynard] was a police officer known by police officers to be a police officer, and by feeding the information to other police officers he [Maynard] as much as impliedly gave them consent to go in and search the apartment. He [Maynard] is the only one who has standing to object. They [the defendant and others] are all in there, it is not their apartment in the first place.

\* \* \* \* \* \*

From the evidence presented the apartment belonged to the police informer, and he is the only one who had a right to object to the entrance."

At the hearing on the merits, the Justice below, on the defendant's motion for acquittal, further stated in relation to the alleged tainted evidence obtained in the search:

"And as to your argument relative to the illegality of the search, even if I were to reopen the hearing we had the other day on your offer of proof as to the interest that this defendant has in the premises, *the evidence does not in any way indicate that he had such an interest, . . . .*"

(Emphasis supplied.)

■ The defendant had standing to question the legality of the search. The search warrant identified him as the occupant of the apartment and the person against whom the search was directed. Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. Thibodeau is charged with having knowingly received stolen property. The very nature of prosecutions for illicit possession of property accords the accused sufficient standing to invoke Rule 41(e) as "a person aggrieved by an unlawful search and seizure." State v. Cadigan, 1969, Me., 249 A.2d 750.

Even though the Justice below and the parties related to the issue in terms of standing, it is obvious that the defendant was afforded the opportunity to question the search and that the issue was resolved, not on the basis of lack of standing, but rather, on the ground that the defendant's interest in the apartment was not such as could prevent Maynard's consent from legitimizing the search, notwithstanding the Court's invalidation of the search warrant.

This Court has upheld searches and seizures based on defendant's consent. See, Papolas v. State, 1967, Me., 235 A.2d 533;

2. The affidavit in support of the warrant stated only that "[a]n informant did advise" the police that the equipment was in the apartment, and concluded with the statement: "The said informant has in the past advised members of the Lewiston Police Department as to certain information which has always been found to be correct and accurate." The affidavit related none of the underlying circumstances from which a magistrate could have concluded that the informant was reliable and that his information resulted from more than mere rumor or suspicion. Absent a recitation of such circumstances, the warrant was patently defective. State v. Benoski, 1971, Me., 281 A.2d 128; State v. Hawkins, 1970, Me., 261 A.2d 255.

State v. Littlefield, 1965, 161 Me. 415, 213 A.2d 431. The issue of third-party consent in connection with one's constitutional right to be secure in one's house, papers and effects, against unreasonable searches and seizures has not, however, been extensively discussed by this Court.

In State v. Niemszyk, 1973, Me., 303 A. 2d 105, we upheld a warrantless search of an apartment where the search was conducted with the express consent of the woman who resided in, and apparently was the principal tenant of, the rent. No question was raised, however, as to the right of the tenant to consent to the search of the apartment of which the defendant had been an occupant at least temporarily, where the search resulted in the seizure of evidence that contributed to his conviction. Previously, in State v. Brochu, 1967, Me., 237 A.2d 418, the issue whether a nineteen year old daughter could give valid consent to the search of her father's home was not resolved, since this Court ruled that the daughter's submission to the officers' apparent legal authority under a search warrant did not rise to the dignity of consent to search and could not validate a police search executed under an invalid warrant.

■ The defendant contends the evidence supports his argument that his relationship respecting the apartment was that of co-tenant with Maynard, the undercover man. The Justice below found otherwise and, in this, we cannot say that he was clearly erroneous. Furthermore, where two or more persons occupy a dwelling place jointly, the general rule is that a joint tenant can consent to police entry and search of the entire house or apartment, even though they occupy separate bedrooms, and the evidence obtained by the officers is admissible against the other joint tenant, although the police had no warrant and there was no emergency. United States v. Fentress, 1971, 9 Cir., 452 F.2d 609, cert. denied 405 U.S. 1045, 92 S. Ct. 1331, 31 L.Ed.2d 587; United States v.

Cataldo, 1970, 2 Cir., 433 F.2d 38; Wright v. United States, 1968, 8 Cir., 389 F.2d 996. Thus, the defendant's contention of co-tenancy would gain him nothing.

■ True, the defendant is entitled to the protection conferred by the Fourth-Fourteenth Amendments to the Constitution of the United States and by Article I, Section 5 of the Constitution of Maine. The rationale which permits a joint tenant to give a valid consent to a search of the premises, absent the other joint tenant, does not rest on the basis that one joint tenant may waive the constitutional rights of the other. Indeed, an individual's constitutionally ordained rights are personal to him, and cannot be forfeited or waived by any other person, acting without his authority or consent. Commonwealth ex rel. Cabey v. Rundle, 1968, 432 Pa. 466, 248 A. 2d 197. Rather, the underlying theory is that the search is not unreasonable if it is carried out with the permission of a person having sufficient control over the property or area searched to grant consent in his own right. Commonwealth v. Rhoads, 1973, 225 Pa.Super. 208, 310 A.2d 406.

The rule of "sufficient control" is well stated in Jenkins v. State, 1967, Del.Supr., 230 A.2d 262, at 270–271:

"The line of reasoning which underlies the joint control doctrine may be stated as follows: the consenting person has the authority, acting in his own behalf and not as agent for the non-consenter, to permit a search of premises to which he has immediate right of possession and control; a search pursuant to such consent is reasonable, absent other circumstances tending to make it unreasonable; evidence that is the product of a reasonable search may be used against anyone. Thus, where two or more persons have joint and equal possession and control of the premises, the prevailing rule is that any one of them may consent to a search; and the evidence thus disclosed may be used against any of them."

■ Where the consenting person, as in the instant case, had more than joint and equal possession and control of the premises, a fortiori, he had sufficient control to bind other occupants by his consent to a search. Jenkins v. State, supra.

In Burge v. United States, 1965, 9 Cir., 342 F.2d 408, cert. denied 382 U.S. 829, 86 S.Ct. 63, 15 L.Ed.2d 72, the appellant was a houseguest in a girl's two-bedroom one-bathroom dwelling in which he occupied one of the bedrooms and shared the bathroom with the female tenant. A search of the apartment with the girl's consent, made in the absence of the appellant, disclosed incriminating evidence against him located in the bathroom. The Court held that the search was not an unreasonable one within the purview of the constitutional privilege, because the girl who gave consent was the tenant and had at least equal rights in the premises.

In Weaver v. Lane, 1967, 7 Cir., 382 F.2d 251, wherein the facts were quite the same as those in the instant case, the Court reached the same result. There, Mr. Weaver testified that he had been living with a family for about a week on an arrangement that he would stay with them for a few days until he could find a place to rent. He stated that he furnished a carpet for the living room and occasionally contributed money for groceries. Thibodeau, who had just been released from jail and had no immediate employment, like Weaver, was given a room in the apartment on a temporary basis and had furnished 6 lighters as his contribution for the use of the room. The Court in *Weaver* found no basis for a holding that Mr. Weaver was a tenant with such exclusive right to the room in which he had been sleeping as to oust his hosts, the actual occupants of the house, from authority to grant consent to the search of the room which produced incriminating evidence against him.

Thibodeau does not contend that the bedroom in which he had been sleeping was reserved for his exclusive use, nor does the evidence support such a factual situation. At best, he was a house guest with no specific arrangement that any particular area of the premises would be for his sole use. Indeed, his own testimony reveals that his room was shared with others. In an attempt to explain away the presence of stolen goods in the room he testified that two transient and unidentified gentlemen from California had been in and out of the apartment and had stored their "back packs" in his bedroom.

Thus, this case is distinguishable from Stoner v. California, 1964, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, where a hotel clerk's consent was held insufficient to justify a search of a patron's room; also, from Reeves v. Warden, Maryland Penitentiary, 1965, 4 Cir., 346 F.2d 915, where a mother's permission to search her son's bureau which had been set aside exclusively for his regular use was declared constitutionally ineffective; also, from Holzhey v. United States, 1955, 5 Cir., 223 F.2d 823, in which the Court ruled that consent given by the accused's daughter and son-in-law to search the garage area in which the mother lived, even though they owned the premises, did not justify a forcible entry into the mother's locked cabinet in which she kept her personal effects.

In United States v. Matlock, 1974, — U.S. —, 94 S.Ct. 988, 39 L.Ed.2d 242, the Supreme Court of the United States noted that cases such as Frazier v. Cupp, 1969, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 and Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, support the view that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed *common authority* over, or other sufficient relationship to, the premises sought to be inspected. The rationale rests on the mutual use of the property by persons generally having joint

access or control for most purposes, so that it is reasonable to recognize that any of the co-occupants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

■ The equipment was in no way placed in an area in which the defendant was given exclusive control. It was lying on the floor of the bedroom beside the "back packs" belonging to the gentlemen from California. Considering that Thibodeau paid no rent for the use of the apartment and that no specific arrangement had been made with Maynard as to the conditions and duration of his stay, the Justice below was not clearly wrong when he concluded that the undercover agent had not surrendered his right of possession and control of the bedroom in which Thibodeau was sleeping and could give valid consent to a search of the apartment, including that bedroom.

The defendant argues that, prior to the execution of the invalid search warrant, the police had not asked Maynard, nor had they received from him, express permission to search his apartment. Furthermore, the officers did not disclose at the time, that the search was being conducted with Maynard's consent. Suggestion is made that such police reticence was necessary to keep the lid on Maynard's connection with the police department.

■ The officers' belief that they were acting under a valid search warrant, even though mistaken, does not nullify the legality of a search reasonably conducted under valid consent. See, State v. Brochu, 1967, Me., 237 A.2d 418, at 424.

■ Maynard testified that, from the beginning when he first telephoned the police to inform them of the strange goods in his apartment, he knew there would be a follow-through search of the premises. Aware as an undercover police officer of the specificity requirements in seeking a search warrant, Maynard described to his fellow officers with particularity the nature of the property and its location in order to facilitate the later search. His active participation in procuring for the police supportive evidence of criminal activity of the defendant and other occupants of his apartment demonstrates beyond any conjecture that he expected a search of his tenement. Such conduct implies consent.

The giving of clear, concise and explicit directions to the police both as to what to search for and where to search for it, especially by a third party undercover agent, is strong evidence of invitation to make the search. See, Rice v. Warden, 1964, D. Md., 237 F.Supp. 463; United States v. Candella, 1972, 2 Cir., 469 F.2d 173; Haire v. Sarver, 1971, 8 Cir., 437 F.2d 1262.

On the peculiar facts of the present case, there is substantial evidence to support the lower Court's finding that Maynard did in fact impliedly consent to the search, and certainly we cannot say that such finding is clearly erroneous.

## II. SUFFICIENCY OF INDICTMENT

The defendant claims that the indictment is fatally defective for failing to negate that the thief of the property, which he is accused of knowingly receiving, was a person other than himself. Such novel argument falls on arid soil and bears the defendant-appellant no fruits.

■ It is true that the State must allege in the indictment every material fact that forms an essential element of the crime intended to be charged. Toussaint v. State, 1970, Me., 262 A.2d 123. Every circumstance which is a necessary ingredient in a prima facie case of guilt must be set out in a complaint or indictment. State v. Munsey, 1916, 114 Me. 408, 96 A. 729.

It is further true that "[t]he offense of receiving is a distinct and substantive crime in itself, and is not merely accessorial to the principal one of larceny." Nis-

senbaum v. State of Maine, 1938, 135 Me. 393, 197 A. 915.

The necessary ingredients of the crime charged under 17 M.R.S.A. § 3551, which must be alleged in the statutory terms or their equivalent and proved, are: (1) that the property was stolen, (2) that the accused bought, received, or aided in concealing the goods, and (3) that he knew the goods were stolen.

■ Any person who is guilty of the actual caption and asportation, or who, jointly with another, takes part initially in the larceny, from the very terms of the statute commonly known as "receiving stolen property" is not affected by the statutory proscription. The legislative use of the words "whoever buys, receives or aids in concealing stolen property" inherently draws within the ban of the ·statute such acts as only persons other than the thief himself can commit, since in the ordinary context of conversation or factual setting people are usually not viewed as buying or receiving from, or giving aid to, themselves in connection with stolen property. Lindsey v. Commonwealth, 1964, Ky., 383 S.W.2d 333; People v. Daghita, 1950, 301 N.Y. 223, 93 N.E.2d 649, reh. den. 301 N.Y. 744, 95 N.E.2d 412.

We said as much, by way of dictum, in State v. Dall, 1973, Me., 305 A.2d 270, that the receiver of stolen goods cannot himself be the thief. In quoting from Wharton's Criminal Law & Procedure, Vol. 2, Page 296, Section 576, we stated:

"The offense of receiving stolen goods may be committed by anyone except the principal thief, that is, the one who is guilty of the actual caption and asportation. A principal in the first degree who has acted with the thief in the actual caption and asportation of the property cannot be guilty of the offense."

■ The gravamen of the offense is the buying, receiving or aiding in concealing, of stolen property belonging to another, knowing that it has been stolen. Logan v. Commonwealth, 1958, Ky., 319 S.W.2d 465. Guilty knowledge is the substance of this offense. State v. Long, 1966, 243 Or. 561, 415 P.2d 171.

■ A charge of receiving stolen property, knowing it to be stolen, by its very terms, sufficiently informs the accused of the nature and character of the accusation against him, without a negative allegation to the effect that the thief of the property was someone other than himself. Such a criminal complaint in and of itself is an assertion that the defendant received the property, not from himself, but from some other person, either from the actual thief or from a third party other than the owner, and it is incumbent upon the State to so prove. State v. Dall, supra.

■ It is for such reason that an indictment charging receiving stolen property need not allege the name of the person who stole the property. Niece v. Commonwealth, 1948, 307 Ky. 760, 212 S.W.2d 291; State v. Callaway, 1954, 72 Wyo. 509, 267 P.2d 970; People v. Allen, 1950, 407 Ill. 596, 96 N.E.2d 446. Nor is it necessary to allege the name of the person from whom the defendant received it. Kirby v. United States, 1899, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890; Cobb v. State, 1957, 201 Tenn. 676, 301 S.W.2d 370.

■ Rule 7(c), M.R.Crim.P. requires that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It need not contain . . . any other matter not necessary to such statement." To require an allegation negativing the accused's participation in the original theft in prosecutions under 17 M. R.S.A. § 3551 would bring back to criminal pleadings the technical niceties which the Maine Rules of Criminal Procedure sought to eliminate. Where the description of the accusation gives the defendant such essential facts as shall adequately apprise an accused of reasonable and normal intelligence of the criminal conduct charged, provides

him with a clear identification of the intended offense and readily indicates the statute under which the indictment was found, no further specification need be laid. Logan v. State, 1970, Me., 263 A.2d 266. The defendant takes nothing from his argument respecting the alleged insufficiency of the indictment.

## III. OWNERSHIP AND VALUE

Thibodeau next contends that the State failed to prove the ownership and value of the goods beyond a reasonable doubt. There is no merit to this point of appeal.

■ Mr. Kral at trial testified that he was the manager of the Knox Mining Corporation and he identified most of the property seized at 77 Pierce Street, Lewiston, Maine, together with the typewriter and adding machine, as the property of the Knox Mining Corporation which had been stolen from its establishment in the night of August 14 to August 15, 1972. The rest he identified as his own. He based his identification on the fact that, when he first went to work for the company, he had ascertained what the company owned, and, thereafter, saw the equipment either in the vault or the office prior to the break, and confirmed his testimonial identification by reason of the fact the serial numbers on the articles matched those entered on the company records in the regular course of business. No objections were made at trial to Mr. Kral's testimony concerning the company's ownership of the property stolen, and this belated effort to discredit such proof on the ground that Mr. Kral's evidence was hearsay must fail. Furthermore, the manager's familiarity with the property, his responsibility for its care and custody, his control of the company records, plus the fact he could identify some of his own property in the loot found at 77 Pierce Street, Lewiston, were all factors demonstrating beyond a reasonable doubt his competency to identify his company's property. See, State v. Estabrook, 1968, Me., 241 A.2d 880.

■ The value of the company's stolen property which the defendant was found guilty of knowingly receiving, was established in excess of $100.[3] Mr. Kral placed the collective value of all the property at $4,000. His own goods, he stated, were worth, at the most, $425. The company's two geovoltmeters alone he valued at $638. Thus, specific proof of value in excess of $100 was abundant. The defendant cannot complain as to this aspect of the trial.

## IV. EVIDENCE OF PRIOR CONVICTIONS

On cross-examination by the County Attorney, the defendant was compelled to admit, over his counsel's objections, that he had been previously convicted in the Superior Court for Androscoggin County of two felonies, 1) grand larceny on January 14, 1971 and 2) breaking and entering with intent to commit larceny on September 30, 1971.

Counsel's stated ground of objection before the Court below rested on the alleged immateriality and irrelevancy of such evidence, together with its potential for serious impairment of the presumption of innocence. Confronted with the legislative declaration in 16 M.R.S.A., § 56 that a

"conviction of a felony, any larceny or any other crime involving moral turpitude may be shown to affect his [the accused's] credibility [as a witness],"

and this Court's sanction of the use of such convictions to attack the credibility of witnesses, including defendants involved in

---

3. At the time of the offense, indictment, trial and sentencing, 17 M.R.S.A. § 3551 provided for an enhanced penalty, if the value of the goods exceeded $100. This figure was increased to $500 in 1973. P.L.1973, c. 39, §§ 1, 2.

criminal prosecutions,[4] the defendant-appellant's contention of error is now presented to this Court in an aspect totally different from what was advanced before the Justice below. In this Court, Thibodeau now says that these convictions were void and inadmissible for impeachment purposes, because this record is silent concerning representation by counsel at the time he entered his guilty pleas to the charges. He relies for support upon Loper v. Beto, 1972, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374. Loper did hold that the use of prior convictions, void because they were obtained without counsel representation, for impeachment of defendant's credibility, was a denial of due process of law. The case is distinguishable, however, since in *Beto* the constitutional invalidity of the previous convictions for want of counsel representation had been established by Beto in the habeas corpus proceeding through his sworn testimony to that effect and records corroborating the same.

■■■ Undoubtedly, if this reason for inadmissibility had been submitted to the Justice below, evidence would have been received to establish the accuracy of the defendant-appellant's present contention, which we cannot take on face value some ten years following Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. Objections to evidence at trial should be stated with such definiteness as to apprise the court of the precise ground upon which they are made; this will facilitate prompt and correct administration of justice. An appellate court will review error on the basis of objections raised at the trial level and will not consider new and different reasons proffered for the first time on appeal to support a contrary ruling. State v. Hause, 1925, 82 N.H. 133, 130 A. 743; State v. Young, 1924, 131 S.C. 94, 126 S.E. 445. See also, McKown v. Powers, 1894, 86 Me. 291, 295, 29 A. 1079, 1081; Glassman, Maine Practice, § 51.2. Absent a showing that Thibodeau was ag-

grieved in this particular under any circumstances, no "obvious" error, as contemplated under Rule 52(b), M.R.Crim.P., appears and this point of appeal fails.

## V. SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT

Finally, the defendant claims that the evidence was insufficient to support his conviction and that it was error to deny his motion for judgment of acquittal. The applicable test on appeal in relation to such question is, whether in view of all the evidence the jury was justified in believing beyond a reasonable doubt that Thibodeau was guilty of knowingly receiving stolen property. State v. Rowe, 1968, Me., 238 A.2d 217, 223–224. See, Glassman, Maine Practice, § 29.3.

That the goods in the defendant's room at 77 Pierce Street, Lewiston, Maine, were in fact stolen property is overwhelmingly supported by the record. The adequacy of proof respecting the defendant's receipt of the equipment and his subjective knowledge that the same had been stolen is the only matter remaining for consideration on this point of appeal. The attempt to bring the facts of the instant case within the factual setting of State v. Dall, supra, is not appropriate. The evidence here discloses much more than the "mere presence" which this Court had to deal with in *Dall*. Indeed, most of the stolen property was located in the room which Thibodeau concedes he occupied. He displayed to Maynard a familiarity with the stolen equipment which could be inferred from intimate connection with the goods such as having them in possession. His declared intention to appropriate the articles to his own use would further support his receiving them. His receipt of a share of the marked money paid by the police in their purchase of some of the loot completely refutes his testimony that some unknown individuals had deposited the goods in his

---

4. See, State v. Knowles, 1904, 98 Me. 429, 57 A. 588; State v. Jenness, 1948, 143 Me. 380, 62 A.2d 867; State v. Toppi, 1971, Me., 275 A.2d 805.

room with the understanding that they would reclaim the property later.

Furthermore, the evidence establishes beyond a reasonable doubt that the defendant did not receive the property from the owners, and that he himself did not commit the actual theft. His own alibi testimony that he was visiting a friend at the time of the break would, if accepted as true by the fact-finder, exclude the possibility that Thibodeau himself was the thief. His further statement to the police that he had no knowledge concerning the property found in his room would support a finding that he was not the actual thief. Such obvious denial of the theft may be taken against the accused in support of a charge of receiving stolen property. People v. Fiorito, 1952, 413 Ill. 123, 108 N.E.2d 455.

On the issue of knowledge that the property was stolen, we observed in State v. Beale, 1973, Me., 299 A.2d 921, that the knowledge required to sustain a conviction for "receiving" need not be direct knowledge or positive proof such as that which might be derived from witnessing the theft or from hearing the thief's admission thereof. It is sufficient if the accused was aware of circumstances which caused him to entertain the subjective belief that the property was stolen. Many factors were present which justified the fact-finder in concluding beyond a reasonable doubt that Thibodeau, as an ordinarily intelligent man, at the time of receiving the goods, had himself in fact reached his own judgment that the equipment was stolen property. The large quantity of goods involved, their strange and unusual character, Thibodeau's intention to dismantle some, his presence during the negotiations relating to fencing the same and while others in the apartment were obviously engaged in forging checks, his knowledge that Maynard had sold some of the articles, his pocketing of a share of the proceeds, all point logically to his own knowledge that the goods were stolen, and were sufficient to lead the fact-finder to draw the rational inference that Thibodeau actually believed them to have been stolen.

The entry will be

Appeal denied.

DELAHANTY, J., did not sit.

All Justices concurring.