(No. 32360.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CARL FIORITO, Plaintiff in Error.

*Opinion filed September 17, 1952—Rehearing denied Nov. 17, 1952.*

GEORGE M. CRANE, and LAWRENCE A. BERMAN, both of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR MANNING, WILLIAM J. McGAH, JR., and SAMUEL PAPENEK, all of Chicago, of counsel,) for the People.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

The plaintiff in error, Carl Fiorito, hereafter called defendant, on a writ of error seeks reversal of his conviction in the criminal court of Cook County for the offense of receiving stolen property. The trial court overruled his motions for a new trial and in arrest of judgment and he was sentenced on the verdict to not less than two nor more than seven years in the penitentiary.

The evidence showed that defendant owned and operated a trucking business in the city of Chicago. He had 17 trucks and trailers, acquired in the ten-year period he had been in business, and maintained his own garage in a leased building located at 63 East Fourteenth Street, where he housed and serviced his trucks and also rented space to other truckers. The trucking business was owned and operated by defendant under the name of Carl's Motor Service. The garage business was operated under the name

of defendant's wife as the R. Fiorito Garage. Some of the equipment was in the name of defendant and some in the wife's name.

One John Behm, a resident of Niagara Falls, New York, testified that on Saturday night, December 17, 1949, at 11:30 P.M., he parked his 1949 Chevrolet tractor, bearing New York license plates, at Eighteenth and Wabash streets in the city of Chicago, and he returned at 10:30 the following morning and the tractor was missing; that he next saw his tractor at the police pound on February 23, 1950; that it had been painted different colors, numerous additional accessories had been installed on it, and it bore a paper composition replica of a 1949 Illinois license plate numbered H8338. The proof showed that Illinois License No. H8338 was issued by the Secretary of State on February 5, 1949, to Carl's Motor Service on an application executed by Carl Fiorito.

Daniel Williams, an employee truck driver of defendant at the time of the alleged offense, testified that he went to defendant's garage early Sunday morning, December 18, 1949, and defendant pointed out a new Chevrolet tractor, and told him, in trucker's terminology, "That is your mule;" that at defendant's direction he painted it and installed additional accessories; that there were no license plates on the tractor and defendant told him to put on a license plate he would find in defendant's car; that this plate was a paper composition replica of an official Illinois license plate, bore number H-8338 which had previously been on an International and a Dodge tractor which the witness had driven for defendant. Williams further testified that he drove this Chevrolet tractor for defendant in Chicago and on trips to Milwaukee until February 3; that on February 4 he went to the garage between 5 and 6 P.M. to work until the next morning as night watchman; that about 9 P.M. at the direction of the defendant he drove the Chevrolet tractor out of defendant's garage, a White tractor

was attached to it, the White tractor was pulled into an alley, and the Chevrolet tractor was taken to a loading dock at Sixteenth and Indiana streets and left there, and defendant took him back to the garage in his car; that upon their return he and other employees moved some other tractors and trailers from the garage and left them at various places; that about 3 A.M. defendant called the witness by phone and told him to deliver another truck to a certain address, this truck failed to start and witness, at defendant's direction, called a mechanic; that between 10 and 11 A.M. the witness drove out of the garage with this truck and was taken into custody by the police; that he next saw and identified the Chevrolet tractor at the police pound on February 23.

One Leroy Moffatt, a former employee of defendant and a friend of Williams, testified that on August 7, 1950, at defendant's garage, the defendant told him that Williams had talked and offered him money to take Williams for a ride, hit him in the head with a hammer and run over him with his car—this to be done at a time when defendant was going to be in Florida.

The defendant testified in his own behalf and denied stealing or receiving the tractor as stolen property and denied the testimony of the witness Moffatt. He stated that he was not at his garage on Sunday, December 18; that he came to the garage on Monday, December 19, the Chevrolet tractor was there and Williams told him it was his (Williams's); defendant denied telling Williams to paint the tractor, to put on accessories or the license plate and stated he had never seen the replica license plate before the trial; he further stated that he employed 17 men and extra help to drive his trucks, none of them ever drove this Chevrolet except Williams, that Williams kept the keys to the Chevrolet, kept it locked and drove it to his home, and none of his other employees were permitted to lock the tractors or drive them to their homes; that Williams

drove the Chevrolet tractor in defendant's business as a subcontractor. Defendant denied telling Williams or any of his employees to remove any trucks or tractors from his garage on February 4 and stated that he left the garage on that day about 7 P.M., leaving Williams at the garage with the keys, and that he next saw Williams in custody of the police on February 6. Defendant denied ever having seen the replica license plate bearing No. H-8338, and another replica plate bearing No. H-8336, which was a paper composition replica of a plate bearing this number which the police had taken from a tractor in defendant's garage, without a search warrant, on February 6.

A special agent of the Federal Bureau of Investigation testified that on February 4, at about 7:30 P.M., he had defendant's garage building under surveillance from the fifth floor of a building at 1338 S. Michigan Blvd., with a pair of 10-power binoculars, and that he was in a position to see both doors of the building. He testified that at 7:55 P.M. a White tractor was pushed out of the garage and stopped at the curb, that a Chevrolet tractor was driven out and the White tractor was attached to it; that he saw defendant come out of the garage with a flashlight with which he inspected the top of the cab, the floor, the glove compartment, and along and under the seat of the White tractor before the tractors were driven away, followed by a Pontiac automobile. He testified that at 10:10 P.M. both doors of the garage were opened and men began bringing out tractors and trailers which were parked along the curb of Fourteenth Street and in a parking lot across this street, and within several minutes most of the tractors were taken away but few were returned to the garage; and that he saw the defendant there from time to time while these vehicles were being moved about.

At the close of the evidence the State dismissed three of the four counts of the indictment which charged grand larceny, tampering with a motor vehicle, and larceny of a

motor vehicle, retaining only the count for receiving stolen property.

The defendant contends that all the evidence introduced in regard to other trucks and tractors was immaterial and prejudicial in raising a presumption that he had other stolen property in his possession; that he was impeached on this immaterial evidence; and that the case made by the People's evidence, if true, proved him guilty of larceny and not receiving stolen property; and that the court erred in permitting the witness Williams to testify in rebuttal after he had violated the court's order excluding the witnesses from the courtroom.

Defendant's most serious contention is that this evidence is not sufficient to prove, beyond a reasonable doubt, the crime of receiving stolen property. The evidence showed the vehicle was stolen between 11:30 P.M. Saturday, December 17, and 10:30 A.M. Sunday, December 18. The State's evidence is to the effect that defendant had possession of the stolen vehicle early Sunday morning before its loss was discovered by the owner. The defendant contends that such possession raises a presumption of larceny by the possessor and if the jury believed the People's testimony, as it must have to have found him guilty, he was proved guilty of larceny and not receiving stolen property.

This reasoning appears to be based on the wholly false premise that recent, unexplained, exclusive possession of stolen property raises a *conclusive* presumption that the possessor is the thief. Such premise is opposite to the very nature of a presumption. A presumption is an inference which a court or jury may be permitted or required to draw, based on human experience and common sense, from known events or circumstances, when there is no evidence from which the ultimate fact can be determined. If, therefore, there is any evidence in the instant case from which the jury could find the defendant guilty of the charge of receiving stolen property, the presumption of larceny from

recent, exclusive, and unexplained possession of stolen goods would not apply.

In *People* v. *Harris,* 394 Ill. 325, relied upon by defendant, a police officer saw the defendant driving a car which had been reported stolen the previous day. When the driver parked the car in front of a tavern, the officer followed the driver into the tavern and seized him when he returned and started to enter the car. He denied owning or having driven the car although he had the car keys in his pocket. The court there reversed a conviction of receiving stolen property saying, at page 330, "There is no evidence that any person other than defendant had anything to do with the automobile after the owner parked it at his place of business." There being no evidence of any kind upon which a verdict of receiving stolen property could be founded, and the defendant having been seen driving the car, the court correctly indulged in the presumption that the defendant himself stole the car and therefore could not be guilty of receiving stolen property from himself.

The *Harris case* is not analagous to the case at bar. Here, the witness Williams testified that he first saw the stolen tractor in defendant's garage the day after it was stolen. The defendant himself testified that he first saw the tractor in the possession of Williams, that Williams claimed ownership, and the implication of defendant's testimony was to the effect that Williams was the thief. The evidence further showed that defendant was the employer of 17 truck drivers, that he had in his possession other tractors which he abandoned on the streets, that the tractor in question was employed in defendant's business, that defendant exercised dominion over it, and that defendant gave the orders and directed its disposal. The defendant specifically denied stealing the vehicle, and it has been held that his denial of the theft may be taken against him and in support of the charge of receiving stolen property. (*Gunther* v. *People,* 139 Ill. 526; *People* v. *Mulford,* 385 Ill. 48.) It is not

necessary in a prosecution for receiving stolen property to allege or prove the identify of the thief. (*People* v. *Israel,* 269 Ill. 284.) The weight of the evidence was for the jury to determine and unless the verdict is palpably contrary to the evidence, the verdict and judgment will not be disturbed by this court. (*People* v. *Allen,* 407 Ill. 596.) We are of the opinion that there was ample evidence here, both direct and circumstantial, upon which the jury could find the defendant guilty, beyond a reasonable doubt, of the offense of receiving or aiding in concealing stolen property. Where there is such evidence it is neither necessary nor proper to resort to any presumption.

Appellant argues that all the evidence involving other presumably stolen trucks and tractors was immaterial and prejudicial, in that extraneous evidence of other crimes is inadmissible and prejudicial error. The only testimony regarding other trucks and tractors in the People's direct evidence was the testimony of Daniel Williams that the defendant owned other tractors, that he had driven others for defendant, and that he moved the White tractor and others out of defendant's garage on the night of February 4. This testimony was inseparably a part of the evidence of disposal of the Chevrolet tractor, was competent to prove defendant's dominion over the Chevrolet and to show that Williams was an employee of defendant and not a subcontractor. We find nothing in Williams's testimony showing that the other tractors were stolen vehicles. Defendant testified in his defense and denied everything that happened on the night of February 4 and denied his presence at the garage after 7 P.M. The subsequent rebuttal testimony of the F.B.I. agent was then competent to impeach defendant as to his presence at the garage when the tractors were removed and we find no statement in this testimony that these other vehicles were stolen property.

But even if we assume the jury might have inferred the other trucks were stolen, we believe the evidence here

was admissible. A well-recognized exception to the rule that proof of other crimes is inadmissible is that, where guilty knowledge is an issue, proof of other related offenses is competent. Under this exception we have held that in prosecutions for receiving stolen property previous offenses of the same kind are competent to show guilty knowledge. *People* v. *Gotler*, 311 Ill. 387; *People* v. *Ensaw*, 341 Ill. 455.

Appellant contends that the court erred in admitting the testimony of witness Moffatt to the effect that appellant offered the witness money to dispose of Williams. We deem it a sufficient answer to this contention to say that it is always competent to show attempts to destroy evidence. *People* v. *Spaulding*, 309 Ill. 292; *People* v. *Fox*, 269 Ill. 300; *People* v. *Gambony*, 402 Ill. 74, *certiorari* denied, 337 U.S. 910.

Appellant's contention that it was error to permit the prosecutor to cross-examine him in regard to the fictitious license plate taken from one of his trucks is without merit. Defendant denied all knowledge of a similar fictitious plate on the Chevrolet tractor. Evidence of another fictitious plate on one of his trucks was proper impeachment of that denial.

The last error urged by defendant is that the court permitted the witness Williams to be recalled in rebuttal after he had violated the court's rule excluding the witnesses from the courtroom. This is a discretionary matter with the trial court and is not necessarily prejudicial. (*People* v. *Sink*, 374 Ill. 480.) It is the duty of counsel as well as the court to see that such an order is complied with, but, where the defendant fails to point out actual prejudice, no abuse of the trial court's discretion is shown to this court and it is not prejudicial error.

We find no prejudicial error in this record, and the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*