NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240615-U

NO. 4-24-0615

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 16, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MEGANN ULMER, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| CYNTHIA CAMPBELL, | ) | No. 18CH603 |
|     Defendant-Appellee, | ) | |
| | ) | Honorable |
| | ) | Lisa R. Fabiano, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Harris and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed the trial court's judgment in favor of defendant where the evidence failed to support a finding of adverse possession of a disputed parcel of land containing a gravel driveway.

¶ 2    Plaintiff, Megann Ulmer, appeals the trial court's order in favor of defendant, Cynthia Campbell, in connection with plaintiff's claim seeking adverse possession of a strip of land containing a gravel driveway situated on defendant's property. In January 2023, a bench trial was held.

¶ 3    During trial, the trial court denied plaintiff's motion for the court to visit the property. Several days after a witness testified, plaintiff filed a motion to strike that witness's testimony because the witness was present during the testimony of other witnesses. The court denied the motion, finding the motion was untimely when plaintiff knew of the issue at the time

the witness testified but did not object. Following the conclusion of evidence, the court entered a judgment in favor of defendant, finding (1) plaintiff had not proven her possession was adverse because the property was vacant, giving rise to a presumption the use was permissive and plaintiff had not overcome that presumption and (2) plaintiff's use was not exclusive. After hearing plaintiff's motion to reconsider, the court further held plaintiff's use was permissive regardless of whether the property was vacant and reiterated that she had not shown her use was exclusive.

¶ 4　　　　　On appeal, plaintiff argues the trial court erred by (1) denying her motion to visit the property, (2) denying her motion to exclude the testimony of the witness who was present during other witnesses' testimony, and (3) finding plaintiff did not adversely possess the strip of land, including the driveway, on defendant's property. We affirm.

¶ 5　　　　　　　　　　　　　I. BACKGROUND

¶ 6　　　　　On September 9, 2018, plaintiff filed a complaint to quiet title to a strip of land with a gravel driveway running from Moody Road in Rockton, Illinois, to plaintiff's property at 6690 Moody Road, approximately four-tenths of a mile south. The driveway was situated on defendant's property at 125XX North Meridian Road (Meridian Road Property) but was used by plaintiff as the sole access to her property. The complaint noted an easement and stated the driveway was approximately 15 feet west of that easement. A small portion of the driveway was also used by another neighbor, Lanette Childers, along with her husband, Joe Childers, to access their property near Moody Road. Plaintiff alleged she and her predecessors in interest openly, notoriously, exclusively, and adversely occupied the disputed driveway for over 20 years. Defendant filed an answer alleging plaintiff's use of the property was permissive and filed a counterclaim for ejectment and damages. At trial, defendant clarified she sought removal of a gate and nominal damages.

¶ 7    This court has included a rough diagram depicting the properties at issue at the time of the lawsuit. This diagram was prepared by this court and is not to scale; it is intended only to assist in an understanding of the facts.



¶ 8    On January 24, 2023, the trial court held a bench trial. Before trial, defense counsel moved to exclude witnesses, which the court granted.

¶ 9    Plaintiff testified she purchased 6690 Moody Road in June 2015 and used the gravel driveway as the sole means to access her property. She testified, without providing details, that people had trespassed on her property since she purchased it. She said she would know if someone came on the property by "[j]ust a phone call from our neighbors." Plaintiff admitted she had no first-hand knowledge about the driveway before she purchased the property in 2015.

¶ 10   Plaintiff stated her deed described the inclusion of a driveway. An exhibit of the deed noted a nonexclusive easement for the benefit of two parcels of land created on March 10, 2015. Another exhibit showed a March 10, 2015, recording of an easement for ingress and egress over an existing gravel driveway granted by Gary and Brenda Faulkner, who previously owned defendant's property, to multiple people, including Lanette Childers and Gary Sorg, a previous owner of plaintiff's property. The document specifically stated, "[T]he parties desire to create an easement for ingress and egress over a portion of Grantees' existing gravel driveway which extends over and onto Grantor's premises." Distances listed in the easement added up to approximately 0.36 miles as the total length of the easement, running along a fence line. Grantees would be responsible for maintenance, repair, and replacement of the driveway. While it would appear the easement was the one referred to in the complaint, defendant's counsel indicated it referred to a different easement, possibly involving a railroad right of way, which was also noted in the document. Plaintiff also testified that, at the time she purchased the property, there was an easement over a section of railroad, but she said there was no mention of an easement over the driveway. The record shows the property was surveyed in 2010 by Gary Sorg, showing that most of the driveway was not on plaintiff's land. The record also shows defendant paid the taxes for the property.

¶ 11   Plaintiff stated she never reached out to defendant about the driveway. In May 2016, she put up a locked gate across the driveway to keep people from trespassing. No one had ever told her she could not use the driveway.

¶ 12   Lanette testified her parents used to own 6690 Moody Road, and she lived there from the time she was born in 1968 until she was 18 years old. When she got married in 1986, she moved to 6710 Moody Road, a property abutting the disputed driveway where it intersected with

Moody Road. Lanette did not know the origin of the driveway. During the time she lived at 6690 Moody Road, the driveway was used exclusively for access to that property, and her father and brothers, with occasional help from a neighbor, Leon Shultz, maintained the driveway by plowing snow, laying gravel, and trimming the trees along the edges. There was an old fence on each side of the drive, abutting the Faulkner property on one side and the Shultz property on the other. There used to be gates in the fences. She did not personally see anyone use those gates. However, Lanette had a gate to the road to access pastures on her property.

¶ 13  Lanette testified she never saw tractors or combines use the driveway because modern ones were too big for it. Instead, they accessed the Meridian Road Property from Meridian Road. She said the only people who used the driveway were visitors or mail and package delivery drivers. Because her house was at the end of the driveway, Lanette was able to observe "everything." Lanette previously had driveway alarms, which were no longer effective, installed sometime after 1995, and she indicated she put tape over the monitor for the alarms because it was too loud. She said she also had cameras facing toward Moody Road and a dog that let them know when people were there. She was unable to state when the cameras were installed. The cameras would not show if the driveway was accessed from the fields beside the road. When Lanette saw people come up the driveway, she would alert plaintiff about it. She said sometimes people would go part way down the drive and then back out. Lanette admitted there had been disputes with a member of the Faulkner family in the past about cattle getting onto their property. No one ever told her family they could or could not use the driveway.

¶ 14  Joe testified he had lived at 6710 Moody Road his entire life. In 1977, boundary lines changed after a survey showed an error in the description of the south side of their property. At that time, there was a gate leading from the driveway to the fields on the Meridian Road

Property. When the property lines were changed, the gate was removed, and there was no other way to access defendant's fields from the driveway. Joe said the Faulkners used the driveway to access their land before 1977, when Meridian Road was built, but had not used it since that time.

¶ 15 In 1992, Joe helped his father-in-law Herman Sorg, who then owned the 6690 Moody Road property, dig a trench down the middle of the driveway so a gas line could be installed to the property. They did not seek permission from anyone to install the gas line. Joe never witnessed anyone maintain the driveway except himself and the Sorgs, although he and Herman paid Gary Faulkner to lay gravel on it. He and the Sorgs shared the maintenance of the northern third of the driveway closest to Moody Road. No one ever told him they could not use the road.

¶ 16 Henry Sorg testified he lived at 6690 Moody Road from 1966 until 1977, when he moved to a house across the field. Henry helped his father maintain the driveway by laying gravel and clearing it of snow in the winters. He purchased gravel from Gary Faulkner.

¶ 17 On Easter Sunday, March 23, 2008, Henry saw Wayne Schmidt, the previous owner of defendant's property, taking down a 10-foot portion of the fence and cutting trees along the driveway. Henry confronted Schmidt, who said he owned the driveway. Henry hired a lawyer to send Schmidt a letter. Henry then put the fence back up.

¶ 18 William Faulkner testified he currently lived at 6248 Moody Road. His parents bought the Meridian Road Property about 60 years ago, when he was 10 or 12 years old. Faulkner testified the driveway was part of his parents' farm, with an easement to 6690 Moody Road.

¶ 19 William said he used the driveway "constantly" over the years to farm or store hay in the fields adjacent to the driveway. He also used it to access cattle. His father died 18 years ago, and he used the driveway up until the time he sold the property to Schmidt, after which he had no reason to go there. When the property was sold to Schmidt, William used the driveway to clear

equipment off of the property using a tractor and hayrack. William testified he last used the driveway 17 or 18 years ago, when he took most of an afternoon to remove items from the fields. He also confirmed he was able to enter the driveway because some of the fence was not there or was on the ground. He used the driveway to access the fields because it was the closest route for him and he believed it belonged to his family. William said he also used the driveway to access the fields in order to drink beer when he was younger and was never told he could not go there.

¶ 20 William was unaware of his father ever telling the Sorgs, or other owners of 6690 Moody Road, that they could not use the driveway. He was aware the Sorgs used the driveway daily to access their home and said they had permission to do so. He stated, "[T]hey had an easement with no question." He described the trees in the area as "[t]rash trees" and noted the fence was a "kind of deteriorated junk fence." The purpose of the fence was to keep stock in their fields, not to keep people out.

¶ 21 Defendant testified she purchased the Meridian Road Property from Schmidt in 2011. There were no buildings on the property. Before she purchased the property the realtor showed her the driveway that came with it. Both before and after defendant bought the property, she frequently parked in the fields and walked along the driveway, entering from the fields. Nobody ever told her she could not use the driveway until 2015, when she brought some friends to see her land. When she got out of the car to open a gate, Lanette aggressively ran out of her house and yelled that defendant could not use it. Defendant testified she explained who she was and said that she could drive down the road, but Lanette "ranted and raved" that they could not. The group then left.

¶ 22 In 2017, defendant tried to use the driveway and found a lock on the gate that prevented access. Defendant had an attorney send a letter to Joe stating the driveway was on

defendant's property. The letter further stated defendant had no objection to the Childers or plaintiff using the driveway or the gate to access their properties, but defendant needed a key to the gate since it was located on her property. Plaintiff was sent a copy of the letter. Defendant testified she had no desire to block anyone from accessing their homes and they still had her permission to use the driveway. She said she just did not want to be prevented from using the property herself. In the past year, defendant had driven partway down the drive and found the gate open. She backed out because the driveway had narrowed and there was no place to turn around. No one ever told defendant they claimed the driveway was their property.

¶ 23    After testimony was completed, plaintiff, without making a formal motion, suggested the trial court should visit the property. The attorneys for the parties noted they had not been to the property for three or four years and the condition of the property might have changed. The court denied the request, stating it was not necessary to visit the property and finding the trial testimony was more relevant.

¶ 24    Three days later, plaintiff moved to strike William's testimony and provided supporting affidavits. Plaintiff alleged William remained in the courtroom when witnesses were excluded, and plaintiff's counsel noticed William was there during plaintiff's case in chief. Plaintiff alleged defense counsel asked William to leave, and he did so, but he had observed all of plaintiff's evidence. Defense counsel told the trial court William was not in the courtroom when the motion to exclude witnesses was made or when witnesses were asked to leave and indicated William entered the courtroom after that point. The parties disagreed whether deposition testimony from William was consistent with his testimony. William's deposition is not in the record on appeal. The court found plaintiff waived the issue by failing to object at the time of William's testimony when the court or the parties could have questioned William about the matter.

¶ 25 The trial court found plaintiff had not met her burden of proving the necessary elements of an adverse possession claim. In part, the court found plaintiff had not established her possession was hostile or adverse because the property was vacant, giving rise to a presumption the use was permissive and plaintiff had not overcome that presumption. On the counterclaim, the court found defendant was entitled to access the land. The court granted defendant's counterclaim for ejectment and awarded costs of the suit.

¶ 26 Plaintiff's counsel expressed concern plaintiff could no longer use the driveway and would have to remove the gas line based on the ruling. Defense counsel stated defendant was willing to discuss formulating an easement for use of the driveway. Defense counsel also specifically stated defendant was not trying to cut plaintiff off from accessing her property and he was sure defendant would let plaintiff continue to use the driveway pending an appeal. Counsel noted their position all along was plaintiff was welcome to use the driveway and just had to provide access to defendant.

¶ 27 Plaintiff moved to reconsider, contending the trial court erred in finding the property was vacant and that a presumption of permissive use applied. Plaintiff also argued the installation of the gas line and replacement of a gate were acts of dominion over the property.

¶ 28 The trial found, even if the determination the property was vacant was in error, the evidence still showed the original use was permissive, and plaintiff also failed to show exclusive use of the property. The trial court found, because the original use was permissive, plaintiff had to do something akin to an "ouster" of defendant from the property for the 20-year term for adverse possession to begin running. The court also found, while there was a lack of evidence of permissive use after Schmidt purchased the land in 2005, defendant's 2017 letter stating she needed access to the land reestablished permissive use. Finally, the court found plaintiff had not shown hostile or

exclusive use of the property. The court noted William had used the driveway within the past 18 years, plaintiff had frequently walked along the drive, and the Childers used a portion of it to access their property. Thus, the court denied the motion.

¶ 29    This appeal followed.

¶ 30                                II. ANALYSIS

¶ 31    On appeal, plaintiff argues the trial court erred by (1) denying her request for the court to visit the property, (2) denying her motion to exclude the testimony of the witness who was present during other witnesses' testimony, and (3) finding in favor of defendant.

¶ 32                        A. Request to Visit the Property

¶ 33    Plaintiff contends the trial court erred in denying her request to visit the property. Plaintiff argues a visit was necessary to allow the court to see the land in its current state, the amount of maintenance, and the possible access to the area and defendant's fields with vehicles.

¶ 34    The decision whether the trier of fact will visit and inspect property that is the subject of a lawsuit is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. See *Munjal v. Baird & Warner, Inc.*, 138 Ill. App. 3d 172, 184-85 (1985), *rev'd on other grounds*, *Avery v. State Farm Mutual Auto Insurance Co.*, 216 Ill. 2d 100 (2005) (addressing discretion to allow a jury to view the premises); see also *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 37 (addressing the same in relation to the determination of a forum *non conveniens* motion); *People v. Cardamone*, 381 Ill. App. 3d 462, 510 (2008) (applying the same in a criminal case). "A trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view." *Wheat v. Murphy*, 2024 IL App (4th) 231307, ¶ 48.

¶ 35    Here, we cannot conclude the trial court's decision to decline to visit the property

was arbitrary, fanciful, or unreasonable. When the request was made, the parties noted multiple years had passed since the complaint was filed and the appearance of the property could have changed. The current state of the property was not a pertinent issue. Instead, the use of the property in the past was primarily at issue, and a visit would not address the ability of defendant and her predecessors to access the fields in previous years or show the amount of past maintenance. Thus, the court found the trial testimony was the most relevant. Accordingly, the court did not abuse its discretion in denying plaintiff's request.

¶ 36                          B. Motion to Exclude Testimony

¶ 37          Plaintiff next contends the trial court erred when it denied her motion to exclude William's testimony.

¶ 38          The trial court has discretion in determining whether to permit a witness to testify despite the fact the witness violated a rule of exclusion. *People v. Fiorito*, 413 Ill. 123, 131 (1952); *Harrisburg Community Unit School District No. 3 v. Steapleton*, 195 Ill. App. 3d 1020, 1023 (1990). It is the duty of both counsel and the court to see that such an order is complied with, but, where the party seeking to prevent or strike the testimony fails to point out actual prejudice, no abuse of the court's discretion is shown and there is no prejudicial error. See *Fiorito*, 413 Ill. at 131.

¶ 39          Here, plaintiff has not made any showing of prejudice. The parties disagreed whether William gave testimony differing from that of his deposition, and plaintiff did not present the deposition to the trial court to show otherwise, nor is the deposition contained in the record on appeal.

¶ 40          Further, the motion to strike William's testimony was untimely. "A motion to strike is timely as soon as the objectionable character of testimony becomes apparent." *Levin v. Welsh*

- 11 -

*Brothers Motor Service, Inc.*, 164 Ill. App. 3d 640, 659 (1987). Here, plaintiff knew of William's presence in the courtroom at the time of his testimony, but plaintiff waited until after all of the evidence at trial was completed to raise the matter. Thus, plaintiff delayed too long in bringing the motion. For the foregoing reasons, we cannot conclude the trial court's denial of the motion was arbitrary, fanciful, or unreasonable. Accordingly, the court's denial of the motion to strike testimony was not an abuse of discretion.

¶ 41                          C. Finding in Favor of Defendant

¶ 42        Finally, plaintiff argues the trial court erred in finding plaintiff did not adversely possess the strip of land, including the driveway, on defendant's property. Plaintiff contends the court erred in finding the property was vacant, requiring an ouster of defendant, and determining plaintiff was not in open, exclusive, and hostile possession of the property.

¶ 43        To establish title by adverse possession, the party must possess the disputed property for 20 years. 735 ILCS 5/13-101 (West 2018); *In re Estate of Cargola*, 2017 IL App (1st) 151823, ¶ 18. Further, the possession "must have been (1) continuous; (2) hostile or adverse; (3) actual; (4) open, notorious, and exclusive; and (5) under claim of title inconsistent with that of the true owner." (Internal quotation marks omitted.) *Brandhorst v. Johnson*, 2014 IL App (4th) 130923, ¶ 37. "The proof must be such as to establish with reasonable certainty the location of the boundaries of the tract to which the five elements of adverse possession are applied and all of the elements must extend to the tract so claimed." (Internal quotation marks omitted.) *Joiner v. Janssen*, 85 Ill. 2d 74, 51 (1981). Adverse possession by successive possessors of property who were in privity can be combined to establish continuous possession. *McNeil v. Ketchens*, 397 Ill. App. 3d 375, 394 (2010).

¶ 44        In adverse possession cases, all presumptions are in favor of the title owner, and

the party claiming title by adverse possession must prove each element by clear and convincing evidence. *Brandhorst*, 2014 IL App (4th) 130923, ¶ 38. We will not disturb the trial court's findings unless they were against the manifest weight of the evidence. *Id.* " 'A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence.' " *Id.* (quoting *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 70).

¶ 45                                 1. *Adverse Versus Permissive Use*

¶ 46        Plaintiff contends the trial court erred in determining the property was vacant and by applying a presumption of permissive use. Defendant notes, even if the property was not vacant and the presumption did not apply, plaintiff still failed to show hostile or adverse possession for 20 years because the evidence nevertheless showed plaintiff's use of the land was permissive.

¶ 47        "To satisfy the hostile or adverse element of acquiring title by adverse possession, a claimant need not demonstrate any actual ill will between herself and the true property owner but merely an assertion of ownership incompatible with any other claim of right." *Cargola*, 2017 IL App (1st) 151823, ¶ 19.

> " 'Although evidence of the use and control over land is the typical manner by which any claimant establishes title by adverse possession, it must be clearly shown that the use of the land was adverse and not merely permissive, since permissive use of land, no matter how long, can never ripen into an adverse possessory right.' " *Brandhorst*, 2014 IL App (4th) 130923, ¶ 42 (quoting *Mann v. LaSalle National Bank*, 205 Ill. App. 3d 304, 309-10 (1990)).

"Where the property is used with the permission of the owner, possession is not hostile or adverse." *Cargola*, 2017 IL App (1st) 151823, ¶ 19. Further, permission may be inferred from the neighborly

relationship of the parties or from other circumstances attending the use. *Roller v. Logan Landfill, Inc.*, 16 Ill. App. 3d 1046, 1052 (1974).

¶ 48      Here, the trial court found plaintiff failed to show the use of the property by plaintiff and her predecessors was not permissive. William testified that plaintiff's predecessors used the driveway with his family's permission. Plaintiff argues this merely shows a belief by William that the use was permissive. However, William specifically testified plaintiff's predecessors "had an easement with no question" over the driveway. The court was entitled to accept William's testimony on that point.

¶ 49      Further, while it is not entirely clear from the record, a 2015 document appeared to grant a written easement for the driveway, or at least a substantial portion of it, from the Faulkners to plaintiff's predecessors. While the record indicates that easement does not accurately encompass the driveway, it clearly stated (1) portions of the driveway were on the Faulkners' property and (2) a clear written intent from the Faulkners to grant permission to plaintiff's predecessors to use the driveway.

¶ 50      Further, the trial court also found, because there was originally only one driveway built for access to three properties, it was reasonable to conclude the use was permissive. Plaintiff had the burden to show nonpermissive use and presented no evidence she or her predecessors had ever been told they did not have permission to use the driveway or that an easement did not exist. Because nothing occurred to rescind that permission more than 20 years before the date of the filing of the complaint, it was not unreasonable or arbitrary for the court to find plaintiff failed to establish a right to title based on adverse possession.

¶ 51                    *2. Exclusive Use*

¶ 52      The trial court's finding plaintiff failed to show exclusive use was not against the

- 14 -

manifest weight of the evidence.

¶ 53　　　　　To establish exclusivity, the adverse claimant must possess the property independent of a like right in others and the rightful owner must be deprived of possession. *Brandhorst*, 2014 IL App (4th) 130923, ¶ 57. " 'If the possession is only used and enjoyed in common with others, or the public in general, it cannot be regarded as hostile to other persons claiming title.' " *Estate of Welliver v. Alberts*, 278 Ill. App. 3d 1028, 1039 (1996) (quoting *Travers v. McElvain*, 181 Ill. 382, 387 (1899)). While that proposition blends two of the adverse possession elements, it nonetheless clearly finds an application to the principle of exclusivity because " '[i]t is evident that two or more persons cannot hold one tract of land adversely to each other at the same time.' " *Id.* (quoting *Marengo Cave Co. v. Ross*, 212 Ind. 624, 633 (1937)).

> " 'The rightful owner cannot be deprived of his title by the possession of another, although such other person [claims] to own it, if the rightful owner is also in possession during the same time the adverse claimant is in possession. Any sort of joint possession with the owner is not sufficient to support title by adverse possession. *The owner must be wholly excluded from possession by such claimant for the stated period.*' (Emphasis added.)" *Id.* (quoting *Fiorella v. Jones*, 259 S.W. 782, 785 (Mo. 1923)).

¶ 54　　　　　Here, plaintiff failed to show 20 years of exclusive use. William testified he "constantly" used the driveway to access his family's property until around 18 years ago. After that time period, defendant frequently walked along the driveway, accessing it from her property, and she previously drove on the driveway. The Childers also continuously used a small portion of the driveway to access their own property. The first indication plaintiff or her predecessors sought to exclude anyone from a portion of the property was in 2008, when Henry confronted Schmidt

about Schmidt's removal of a portion of the fence and cutting trees along the driveway. Even then, the testimony was not clear Schmidt was told he could not access the driveway. In any event, that event occurred in 2008, such that 20 years had not lapsed. Then, a definitive act excluding others from the property did not occur again until after defendant purchased the property and was confronted by Lanette and plaintiff locked a gate, which again was less than 20 years ago.

¶ 55 Plaintiff argues acts of dominion such as maintaining the driveway and installing a gas line showed exclusive possession. But those factors are evidence of actual possession and open and notorious use of the land. They are not factors affecting exclusivity because they were not acts that excluded others from use of the property. We also note it is questionable that the presence of a hidden gas line is an open and notorious use. See *North County Development, LLC v. Village of Cobden*, 2023 IL App (5th) 220624-U, ¶ 24. Further, there was evidence that others assisted plaintiff's predecessors in maintaining the driveway, and the Childers shared maintenance of the driveway within the past 20 years. Thus, there was evidence the maintenance was not exclusive. Accordingly, the trial court's finding plaintiff failed to show exclusive use was not against the manifest weight of the evidence.

¶ 56 Because the trial court's findings plaintiff failed to show adverse and exclusive use of the property were not against the manifest weight of the evidence, we need not address plaintiff's additional arguments regarding the court's vacant property findings or that defendant's "ouster" was required to start the 20-year period running.

¶ 57       III. CONCLUSION

¶ 58 For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 59 Affirmed.